<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| JULIA ROSER, GLENN ROSER, and their minor children LYDIA ALLEN and DANIELLE ROSER, | Civil Action No. 25-13221 |
| *Plaintiffs*, | **OPINION** |
| v. | June 23, 2026 |
| BALFOUR BEATTY MILITARY HOUSING MANAGEMENT LLC and CARLISLE/PICATINNY FAMILY HOUSING LP, | |
| *Defendants*. | |

**SEMPER**, District Judge.

**THIS MATTER** comes before the Court on Defendants Balfour Beatty Military Housing Management LLC and Carlisle/Picatinny Family Housing LP's (collectively, "Defendants") Motion to Dismiss Plaintiffs Julia Roser, Glenn Roser, Lydia Allen, and Danielle Roser's (collectively, "Plaintiffs") First Amended Complaint.  (ECF 17, "First Amended Complaint" or "FAC"; ECF 23, "Motion" or "Mot.")  Plaintiffs opposed the Motion.  (ECF 27, "Opposition" or "Opp.")  Defendants filed a reply.  (ECF 28, "Reply.")  The Court has decided this Motion upon the submissions of the parties, without oral argument, pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1.  For the reasons stated below, Defendants' Motion to Dismiss is **GRANTED**.  Plaintiffs' First Amended Complaint is **DISMISSED** without prejudice.

1

## I.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY[1]

This putative class action arises out Defendants' provision of military housing to Plaintiffs at Picatinny Arsenal in Morris County, New Jersey.  (FAC ¶¶ 1, 27.)

### A.  The Parties

Plaintiff Glenn Roser is an active-duty member of the United States military and the lawful husband of Plaintiff Julia Roser, who leased residential housing at Picatinny Arsenal through Defendants.  (*Id.* ¶ 10.)  Plaintiff Lydia Allen is the natural daughter of Plaintiff Julia Roser, and Plaintiff Danielle Roser is the natural daughter of Julia and Glenn Roser.  (*Id.* ¶¶ 12-13.)  Plaintiffs previously resided at Picatinny Homes, Unit No. 109, 109 Farley Lane, Dover, New Jersey, 07801 (hereinafter the "Subject Premises").

Defendants Balfour Beatty Military Housing Management LLC ("Defendant Balfour" or "Balfour") and Carlisle/Picatinny Family Housing, LP ("Defendant Carlisle" or "Carlisle") lease and manage military family housing for profit under the Military Housing Privatization Initiative ("MHPI"), 10 U.S.C. §§ 2871–2893.  (*Id.* ¶ 2.)  Defendant Balfour is a limited liability company that owns, develops, repairs, maintains, manages, sells, leases, and rents residential homes in New Jersey.  (*Id.* ¶ 14.)  Defendant Balfour is the leading provider of privatized military housing in the United States and was the property manager of the Subject Premises.  (*Id.* ¶¶ 2, 14-15, 29.)  Defendant Carlisle is a limited liability partnership that owns, develops, repairs, maintains, manages, sells, leases, and rents residential homes in New Jersey.  (*Id.* ¶ 17.)  Defendant Carlisle was the owner and landlord of the Subject Premises.  (*Id.* ¶¶ 17, 30.)

---

[1] The facts and procedural history are drawn from the First Amended Complaint (FAC) and documents integral to or relied upon by the First Amended Complaint.  *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).  For the purposes of a motion to dismiss, the facts drawn from the First Amended Complaint are accepted as true.  *See Fowler v. UMPC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009).

### B.  Military Housing at Picatinny Arsenal

Congress enacted the MHPI to address poor housing conditions on military bases across the United States.  (*Id.* ¶ 23.)  Through the MHPI, Congress authorized the military services to enter into long-term partnerships with private developers.  (*Id.* ¶ 24.)  Under the MPHI model, the military may offer cost-saving and other incentives to private entities in exchange for providing base housing and related services to military service members.  (*Id.*)

Picatinny Arsenal, owned and operated by the United States Army, is an American military research and manufacturing facility which provides products and services to all branches of the United States Military.  (*Id.* ¶ 27.)  The Environmental Protection Agency ("EPA") has designated Picatinny Arsenal as a Superfund site based on its "long history of manufacturing explosives," and the contamination of "surface water, ground water, soil, sediments, and game fish with hazardous chemicals including heavy metals, organic compounds, and munitions constituents."  (*Id.* ¶ 32.)

### C.  The Subject Premises

Plaintiffs entered into a written MHPI Military Member Tenant Lease Agreement (hereinafter, the "Lease") for the Subject Premises on June 30, 2023.  (*Id.* ¶ 34.)  The Lease identifies Defendant Carlisle as the owner and landlord and Defendant Balfour as the property manager and agent.  (*Id.*)  The Lease incorporates the Community Guidelines, which establish maintenance response standards, escalation procedures, and classify water intrusion and visible mold as urgent conditions requiring immediate remediation.  (*Id.* ¶ 36.)  The Community Guidelines direct tenants to route habitability and safety issues through Defendants' maintenance system.  (*Id.*)  The Lease also provides that the owner is responsible for maintenance, repairs, and for providing safe, sanitary, and habitable housing.  (*Id.* ¶ 35.)

Plaintiffs moved into the Subject Premises on or about July 4, 2023.  (*Id.* ¶ 41.)  Plaintiffs soon began experiencing health issues.  Plaintiff Danielle Roser experienced recurring strep throat, persistent cold symptoms, high fevers, recurring ear infections, and chronic itches.  (*Id.* ¶ 44.) Plaintiff Lydia Allen experienced chronic respiratory issues, asthma, a hoarse voice, persistent cold symptoms, chronic cough, congestion, difficulty breathing, acute sinusitis, high fevers, and other issues.  (*Id.*)  Plaintiff Julia Roser experienced persistent cough systems, vomiting, anxiety, and depression.  (*Id.*)   Finally, Plaintiff Glenn Roser experienced persistent cold and cough symptoms, and chronic respiratory problems.  (*Id.*)

On March 4, 2024, Plaintiff Glenn Roser submitted a maintenance request to Defendant Balfour requesting that an air quality or mold specialist inspect and test the Subject Premises.  (*Id.* ¶ 55.)  On that same day, Plaintiff Glenn Roser informed Defendants about a mold substance growing on top of a PVC drainpipe in the attic of the Subject Premises, which serviced the second floor HVAC unit.  (*Id.* ¶ 57.)  Defendants' representatives visited the Subject Premises on March 5, 2024, and informed Plaintiffs that there was no evidence of mold or water damage without doing any testing.  (*Id.* ¶ 58.)

Defendants' representatives again visited the Subject Premises to take moisture and humidity readings at some point between March 4 and March 16, 2024.  (*Id.* ¶ 59.)   The representatives allegedly informed Plaintiffs that the readings were below the threshold for concern.  (*Id.* ¶ 60.)   On March 16, 2024, Plaintiffs arranged and paid for Healthy Way Waterproofing and Mold Remediation LLC ("Healthy Way") to conduct mold testing and air sampling throughout the Subject Premises.  (*Id.* ¶ 60.)  Plaintiffs received the test results on March 20, 2024, which showed that several different types of mold were detected in the Subject Premises,

one being at an excessive level. (*Id.* ¶ 61.)  Plaintiffs subsequently vacated the Subject Premises. (*Id.* ¶ 62.)

On March 21, 2024, Plaintiff Glenn Roser provided Defendants with Healthy Way's test results and requested that they address the dangerous living conditions.  (*Id.* ¶ 63.)  This marked the beginning of a series of inspections of the Subject Premises conducted by Defendants' agents, and Defendants' alleged failures to remediate the conditions in the Subject Premises.  (*Id.* ¶¶ 65-77, 82, 84, 86.)  During this period, Plaintiffs resided at the Picatinny Arsenal MWR Cabins at Defendants' expense. (*Id.* ¶ 64.)  However, as of May 8, 2024, Defendants stopped paying for Plaintiff's housing.  (*Id.* ¶ 77.)

On May 20, Defendants offered Plaintiffs a new residence which also appeared to contain mold.  (*Id.* ¶ 79.)  Plaintiffs then notified Defendants that they would not relocate to the new residence and instead requested that the Subject Premises be fully remediated.  (*Id.* ¶ 81.)  Plaintiffs also participated in three informal dispute resolution meetings with Defendants between April and August 2024, in which Plaintiffs presented test results confirming widespread mold contamination throughout the Subject Premises and Defendants denied the existence of the mold.  (*Id.* ¶ 83.)  Plaintiffs ultimately provided Defendants with notice that they were terminating their lease and vacating the Subject Premises on August 20, 2024.  (*Id.* ¶ 85.)

### D.  Procedural History

Plaintiffs initiated this action against Defendants in the Superior Court of New Jersey, Law Division, Morris County on June 10, 2025.  (ECF 1, Exhibit 2.)  Defendants timely filed a Notice of Removal on July 11, 2025.  (ECF 1, Exhibit 1.)  Defendants filed their first motion to dismiss on August 18, 2025.  (ECF 12.)  Plaintiffs filed their First Amended Complaint on September 26, 2025, (FAC), alleging (1) negligence (Count I); (2) breach of contract (Count II); (3) breach of the

implied warranty of habitability (Count III); (4) violation of the New Jersey Consumer Fraud Act (Count IV); (5) common law fraud (Count V); (6) premises liability and personal injury (Count VI); (7) loss of consortium (Counts VII & VIII); and (8) punitive damages (Count IX).  Defendants filed a Motion to Dismiss Plaintiffs' First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) on October 31, 2025.  (Mot.)  Plaintiffs opposed the Motion on December 19, 2025.  (Opp.)  Defendants filed a reply on January 20, 2026.  (Reply.)

## II.    LEGAL STANDARD

### A.  Rule 12(b)(6)

Federal Rule of Civil Procedure Rule 12(b)(6) permits a defendant to move to dismiss a count for "failure to state a claim upon which relief can be granted[.]"  Fed. R. Civ. P. 12(b)(6). To withstand a motion to dismiss under Rule 12(b)(6), a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint is plausible on its face when there is enough factual content "that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Although the plausibility standard "does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotation marks and citations omitted).  As a result, a plaintiff must "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of her claims." *Id.* at 789.

In evaluating the sufficiency of a complaint, a district court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008).  A court, however, is "not compelled to accept unwarranted inferences, unsupported conclusions or legal conclusions

6

disguised as factual allegations." *Baraka v. McGreevey*, 481 F.3d 187, 211 (3d Cir. 2007).  If, after viewing the allegations in the complaint most favorably to the plaintiff, it appears that no relief could be granted under any set of facts consistent with the allegations, a court may dismiss the complaint for failure to state a claim.  *DeFazio v. Leading Edge Recovery Sols.*, No. 10-02945, 2010 WL 5146765, at *1 (D.N.J. Dec. 13, 2010).

### B.  Rule 8

Federal Rule of Civil Procedure Rule 8(a)(2) provides that any pleading including a claim for relief shall contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).

"Complaints that violate Rule 8 are often referred to as shotgun pleadings."  *Cambridge Mutual Fire Ins. Co. v. Stihl Inc.*, No. 22-05893, 2023 WL 5928319, at *2 (D.N.J. Sept. 12, 2023) (internal quotations omitted).  The four categories of shotgun pleadings include complaints that "(i) contain multiple counts where each count adopts the allegations of all preceding counts; (ii) are replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action; (iii) do not separate into each count each cause of action or claim for relief; and (iv) assert multiple claims against multiple defendants without specifying which of them are responsible for which acts or omissions."  *Id.*  Shotgun pleadings all share one common characteristic: the "failure to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests."  *Id.* (internal quotations and citations omitted).

## III.    ANALYSIS

### A. Defendants' Motion to Dismiss the First Amended Complaint for Impermissible Shotgun Pleading.

Defendants ask this Court to dismiss the entirety of Plaintiffs' First Amended Complaint for failing to "specif[y] which of the defendants is responsible for which acts, or which of the

defendants a claim is brought against." (Mot. at 36.)  In response, Plaintiffs argue that the First Amended Complaint allows Defendants "to understand 'the crux' of the allegations and to respond on the merits," thus satisfying Rule 8's pleading standards.  (Opp. at 4.)  In support of their argument, Plaintiffs note that the First Amended Complaint "identifies each Defendant's role" and then "ties those roles to specific conduct giving rise to Plaintiffs' claims." (*Id.* at 4-5.)

As discussed, one category of impermissible shotgun pleadings includes complaints that "assert multiple claims against multiple defendants without specifying which of them are responsible for which acts or omissions." *Cambridge Mutual Fire Ins. Co.*, 2023 WL 5928319, at *2.  Such complaints are often referred to as "impermissible 'group' pleadings." *Foulke v. Twp. of Cherry Hill*, No. 23-2543, 2024 WL 35688141, at *7 (D.N.J. July 29, 2024).  The use of "vague group pleading undermines the notice pleading regime of Rule 8, since it improperly seeks to make all defendants liable for all conduct alleged in the complaint." *Karupaiyan v. Atlantic Realty Dev. Co., Inc.*, No. 18-12532, 2020 WL 13728036, at *2 (D.N.J. Jan. 17, 2020) (internal citations and quotation marks omitted).  "Alleging that 'Defendants' undertook certain illegal acts—without more—injects an inherently speculative nature into the pleadings, forcing both the Defendants and the Court to guess who did what to whom and when." *Japhet v. Francis E. Parker Mem'l Home, Inc.*, No. 14-1206, 2014 WL 3809173, at *2 (D.N.J. July 31, 2014).

While Plaintiffs clarify that Defendant Carlisle acted as the landlord and signatory to the Lease and that Defendant Balfour was the property manager of the Subject Premises, (*see, e.g.*, FAC ¶¶ 104, 113, 121, 128), the First Amended Complaint still fails to differentiate between the acts of each Defendant with respect to each claim.  For example, Plaintiffs allege that Defendants breached their duties under the Lease and the implied warranty of habitability by "failing to remediate water leaks," "misrepresenting the condition of the premises," and "failing to classify

8

and respond to mold as an urgent maintenance issue," but do not specify whether Defendant Carlisle or Defendant Balfour was responsible for the alleged actions and omissions.  (*Id.* ¶¶ 107, 124.)    Plaintiffs similarly vaguely allege that "Defendants' unlawful conduct," such as "misrepresenting that the premises were safe," "concealing results of inspections or testing that revealed unsafe conditions," and "refusing to relocate Plaintiffs despite conditions that rendered the premises unsafe and uninhabitable," amount to a violation of the New Jersey Consumer Fraud Act, (*id.* ¶¶ 128, 130), but again fail to specify which Defendant performed the alleged actions.  Plaintiffs' other claims fare no differently.  (*See id.* ¶¶ 135, 143, 147, 151, 156-7.)

Accordingly, this Court concludes that Plaintiffs engage in group pleading which fails to put Defendants on notice of the allegations against them, in violation of Rule 8(a).  *See Ingris v. Borough of Caldwell*, No. 14-855, 2015 WL 3613499, at *5 (D.N.J. June 9, 2015) (holding that the plaintiff "engaged in impermissibly vague group pleading" because he "collectively refers to 'all defendants named in this count[,]' without describing what any particular defendant actually did," and "did not link any activities that he alleged elsewhere in the [Complaint] with his proposed causes of action"); *see also Cambridge Mutual Fire Ins. Co*, 2023 WL 5928319, at *2.  Plaintiffs' First Amended Complaint is therefore **DISMISSED** without prejudice.[2]

### B.  Plaintiffs Waived Their Arguments as to Counts I-II, V, VII-XI.

Defendants also argue that Plaintiffs waived their claims as to Counts I, II, V, VII, VIII, and XI by failing to cite any legal authority or provide any legal analysis in support of their

---

[2] Defendants also allege that Count I of the First Amended Complaint is barred by the economic loss doctrine; Count II fails to state a claim for breach of contract; Counts III, IV, and XI are barred by the federal enclave doctrine; Count V fails to state a claim under to Rule 9(b)'s heightened pleading standard; and Count XI also fails to state a claim for punitive damages.  (Mot. at 20-35.) Given that the Court grants Defendants' Motion under Rule 12(b)(6) and Rule 8, the Court refrains from engaging in analyses of Defendants' additional arguments at this time.

arguments opposing Defendants' Motion to Dismiss.  (Reply at 12-17.)

While the Court has already dismissed the First Amended Complaint as an impermissible shotgun pleading, *see supra*, it notes that Plaintiffs' failure to support their opposing arguments with respect to Counts I, II, V, VII, VIII, and XI does indeed result in the waiver of those claims. *See Reynolds v. Wagner*, 128 F.3d 166, 178 (3d Cir. 1997) ("[A]n argument consisting of no more than a conclusory assertion … will be deemed waived."); *see also Burns v. SeaWorld Parks & Entertainment, Inc.*, 675 F.Supp.3d 532, 548 (E.D. Pa. 2023) (holding that, at the motion to dismiss stage, "[a]rguments 'consisting of no more than a conclusory assertion' lacking supporting citations 'will be deemed waived'").  A review of Plaintiffs' Opposition shows that Plaintiffs both rely on conclusory assertions and fail to cite any legal authority in their responses to Defendants' effort to dismiss Counts I, II, V, VII, VIII, and XI of their First Amended Complaint.  (*See, e.g.*, Opp. at 7 ("The economic loss doctrine bars tort claims only where a plaintiff seeks purely economic damages arising from a contractual relationship."); 11 ("While Defendants base their argument that Plaintiffs' loss of consortium claims should be dismissed on the ground that Plaintiffs' underlying tort claims fail, Plaintiffs have plausibly alleged viable tort claims, including negligence and premises liability resulting in personal injury, and Defendants' argument therefore fails.").

This additional reason warrants the dismissal of Counts I, II, V, VII, VIII, and XI of Plaintiff's First Amended Complaint without prejudice irrespective of whether they were adequately pled.  In any amended pleadings, Plaintiffs should be sure to provide a legal basis for each opposing argument made.

## IV.    CONCLUSION

For the reasons stated above, Plaintiffs' First Amended Complaint is **DISMISSED** without prejudice.  Plaintiffs have 30 days to file a second amended complaint in accordance with this Opinion.  An appropriate order follows.

*/s/ Jamel K. Semper*
**HON. JAMEL K. SEMPER**
**United States District Judge**

Orig:          Clerk
cc:            Cari Fais, U.S.M.J.
               Parties

11